IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                                  CRIMINAL NO. 2:11CR38

ROBERT S. CORKERN

**MEMORANDUM OPINION**

This cause comes before the court upon the defendant Robert S. Corkern's Motion to Vacate or Set Aside Judgment pursuant to 28 U.S.C. § 2255. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Factual and Procedural Background

Defendant Robert Corkern was indicted in September 2011 on the following counts: one count of conspiracy to make a false statement to the USDA in violation of 18 U.S.C. § 1014; three counts of aiding and abetting the making of a false statement to the USDA in violation of 18 U.S.C. § 1014; and one count of federal program bribery in violation of 18 U.S.C. § 666.

Corkern entered a plea of guilty to the one count of federal program bribery, Count Thirteen of the Superseding Indictment, on January 9, 2012. In doing so, Corkern admitted to paying $25,000 to David Chandler, the Panola County, Mississippi Administrator. This money was a bribe and reward for Chandler's role in securing a $400,000 payment from Panola County to Tri-Lakes Medical Center on March 20, 2007. Additionally, Corkern agreed to serve as a government witness in the trial of his co-defendants, Earnest Levi Garner and Raymond Shoemaker. On November 13, 2012, this court sentenced Corkern to a term of three years of supervised release, but including two years of home detention.

Following his sentencing, Corkern faced difficulty in maintaining his professional licenses and accreditations related to his practice as a medical doctor. While he was ultimately able to secure the reinstatement of his license to practice medicine in the State of Mississippi,[1] to date his Medicare and Medicaid privileges have not been restored. He asserts that this shortcoming makes it virtually impossible for him to continue practicing medicine.

Corkern filed the present Motion to Vacate or Set Aside Judgment pursuant to 28 U.S.C. § 2255 on November 13, 2013. He alleges in his petition that he received ineffective assistance of counsel regarding his guilty plea. This court granted Corkern's motion for a hearing on his § 2555 petition, and a hearing was held on September 12, 2016. It came to light in the hearing that the parties were uncertain as to whether Corkern's Medicare and Medicaid licensing had actually even been suspended. The court took the matter under advisement and held its ruling in abeyance while the parties made this determination. The parties subsequently advised that Corkern's Medicare and Medicaid privileges were in fact terminated. Corkern's petition is now ripe for review.

## Standard of Review

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 620-21 (1998). The Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Id.* at 621. "Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.*

---

[1]Corkern is currently employed as a physician with Delta Regional Medical Center in Greenville, Mississippi.

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (internal citations omitted). A defendant who fails to raise a claim on direct appeal may be procedurally barred from raising the claim in a § 2255 petition. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622. An ineffective assistance of counsel claim, however, may be brought under § 2255 regardless of whether the petitioner could have raised the claim on direct appeal and "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Analysis

Corkern couches all of his claims in his § 2255 petition in terms of the Sixth Amendment's right to effective representation. An ineffective assistance of counsel claim is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, the petitioner must demonstrate that his attorney's performance was both deficient and prejudicial. *Id*. The petitioner must show that counsel's performance was outside the broad range of what is considered to be reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show prejudice in the context of a guilty plea, the petitioner must show that "counsel's constitutionally ineffective performance

3

affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When the conviction is based upon a guilty plea, the petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Corkern makes three main arguments in support of his § 2255 motion and ineffective assistance of counsel claim: (1) that his defense counsel failed to incorporate all the terms of his plea agreement into the written plea agreement document; (2) that his defense counsel failed to advise him of all the collateral effects of his guilty plea; and (3) that his defense counsel failed to argue an element of the offense, i.e., the agency of David Chandler.

*Unkept Promise*

Corkern alleges in his § 2255 petition that the United States Attorney's Office promised him that the "full weight and credibility of the United States government" would support his attempt to regain his medical license following his conviction and sentence. He asserts that his defense counsel's failure to make sure this promise was documented in his written plea agreement amounts to ineffective assistance of counsel. Corkern attached to his petition an email from former Assistant U.S. Attorney Charlie Spillers to his defense counsel, Bill Travis, which the government asserts accurately explains its position regarding Corkern's medical license. The email states as follows:

> Bill,
> It was good talking with you about Dr. Corkern and his concerns about losing his license to practice medicine. As you know, we have no control over that matter. However, if you want to undertake sending a letter to the medical board on behalf of Dr. Corkern[,] we would be able to verify that he took responsibility for his actions, and in an effort to rectify his past conduct he immediately cooperated with the US Attorney's office and the FBI, and assisted the government by truthful trial testimony.

4

>  Best regards,
>  Charlie

Corkern now claims that the government's position in this email is inconsistent with the alleged promise that the government made to assist him with his medical licensure. The email is dated March 21, 2012, though Corkern's petition incorrectly states that the email was sent in 2013. Corkern was sentenced in November 2012. Since he was, therefore, aware of the basis of his claim or could have been aware of the basis of his claim with reasonable diligence, he cannot demonstrate cause to excuse his failure to assert the claim on direct appeal.

Further, Corkern's medical license has in fact been reinstated, and he currently practices medicine in the State of Mississippi. He now appears to assert that the promise made to him included all of his medical licensure, specifically his licensing to participate in the Medicare and Medicaid programs. This assertion is contrary to his petition wherein Corkern clearly states that the alleged promise was related only to "his attempt to maintain his state medical license." His affidavit attached thereto states that "the only thing we discussed was my actual medical license."

In order to establish this claim in a habeas petition, Corkern must provide more than his own self-serving affidavit. *United States v. Rivera*, 16 F.3d 1215, 1994 WL 57608, at *2 (5th Cir. 1994). He has failed to do so. Corkern's claim regarding the government's alleged agreement to assist him is essentially a claim that his guilty plea was involuntary because of an unkept promise made by the government. Because this claim is inconsistent with representations he made under oath in open court during his guilty plea, he must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes*, 132 F.3d 1106,

1110 (5th Cir. 1998). "If the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue." *Id.*

Though Corkern failed to provide the required indicia of reliability, this court granted his motion for a hearing, and a hearing was conducted. The government accurately notes that Corkern offered no evidence in support of his claim of an unkept promise by the government when he had the opportunity to do so at the evidentiary hearing before this court. The record is devoid of evidence supporting his claims of government misconduct and of an alleged promise pertaining to his licensing for Medicare and Medicaid. It is well-settled that a self-serving affidavit, standing alone, cannot support a claim of an unkept promise in a § 2255 petition which contradicts the defendant's own sworn testimony at his plea hearing. *Cervantes*, 132 F.3d at 1110. Corkern clearly stated during his guilty plea that no one had made any promises to him, aside from the actual written plea agreement, to induce him to plead guilty. "Solemn declarations in open court carry a strong presumption of verity," creating a "formidable barrier in any subsequent collateral proceedings." *Id.* Corkern has failed to cross this barrier. For the foregoing reasons, the court finds no merit to Corkern's claim regarding an alleged unkept promise by the government and, accordingly, no merit to Corkern's claim of ineffective assistance of counsel on this issue.

*Collateral Effects*

Corkern asserts in his § 2255 petition that his former defense counsel, Bill Travis, deprived him of effective assistance of counsel because "Travis did not conduct research or counsel Dr. Corkern on all the full collateral effects of the conviction. . . . Travis never advised

6

Dr. Corkern that because of his status as a felon, he would lose all of his certifications and memberships needed to practice emergency medicine." Specifically, he now alleges that Travis should have advised him that he would lose his Medicare and Medicaid licensing and privileges.

Prior to the Supreme Court's holding in *Padilla v. Kentucky*, courts had routinely held that the Sixth Amendment does not require a defense attorney to advise his client as to the potential collateral consequences of a criminal conviction. "[T]his Court has never held that a criminal defense attorney's Sixth Amendment duties extend to providing advice about such matters." *Padilla v. Kentucky*, 559 U.S. 356, 377 (2010) (Alito, J., dissenting).

*Padilla* was specifically concerned with the issue of advising a defendant about the immigration consequences of a criminal conviction. Subsequently, defendants have attempted to argue that *Padilla* eliminated the distinction between direct and collateral consequences altogether as it pertains to the Sixth Amendment. The Supreme Court, however, made clear in *Chaidez v. United States*, that *Padilla* did not totally eliminate the distinction:

> Our first order of business was thus to consider whether the widely accepted distinction between direct and collateral consequences categorically foreclosed Padilla's claim, whatever the level of his attorney's performance. We did not think, as Chaidez argues, that *Strickland* barred resort to that distinction. Far from it. Even in *Padilla* we did not eschew the direct-collateral divide across the board. See 559 U.S., at ——, 130 S.Ct., at 1481 ("Whether that distinction is [generally] appropriate is a question we need not consider in this case"). Rather, we relied on the special "nature of deportation" – the severity of the penalty and the "automatic" way it follows from conviction – to show that "[t]he collateral versus direct distinction [was] ill-suited" to dispose of Padilla's claim. *Id.,* at ——, 130 S.Ct., at 1482.

*Chaidez v. United States*, 133 S. Ct. 1103, 1111–12 (2013). As the government argues, to suggest that *Padilla* goes beyond its narrow application to deportation and immigration consequences and expands to collateral consequences such as a professional license or even

7

membership in a professional association is a radical expansion of the Sixth Amendment that is wholly unsupported by case law. *Padilla* was particularly concerned with the severity of deportation and the practically automatic consequence of deportation upon a felony conviction. *Padilla*, 559 U.S. at 374. The defendant has offered no indication that *Padilla* should be used to expand the Sixth Amendment to cover all potential collateral consequences of a criminal conviction, and this court declines to do so here, especially in light of the Supreme Court's clarification in *Chaidez*. The court finds that Corkern's claim regarding the collateral effects of his conviction is without merit.

*Agency of David Chandler*

This court has previously found that David Chandler was an agent of Panola County, Mississippi, for the purposes of Corkern's bribery plea. The court specifically held that "Chandler's authorization to transfer the $400,000 from the county's account to the account of Tri-Lakes Medical Center is found to comply with the law of agency as required by this federal statute [18 U.S.C. § 666]." Corkern argues that his attorney provided ineffective assistance of counsel by refusing to challenge this ruling.

The court maintains that its ruling was supported by the facts of this case and by Fifth Circuit precedent. Corkern, therefore, cannot demonstrate prejudice as it relates to his defense counsel's failure to argue the issue of Chandler's agency or challenge the court's ruling on this matter, as it is clear the court would reach the same result were it to revisit the question. Corkern's claim of ineffective assistance of counsel as it relates to this matter is without merit.

Conclusion

In accordance with the foregoing analysis, the court finds that the defendant's Motion to Vacate or Set Aside Judgment pursuant to 28 U.S.C. § 2255 should be denied. A separate order in accord with this opinion shall issue this day.

This, the 31st day of March, 2017.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**